**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| TURKHAN MIRZAYEV,<br><br>              Plaintiff,<br><br>    v.<br><br>STEMLINE THERAPEUTICS, INC., IVAN BERGSTEIN, RON BENTSUR, DARREN CLINE, ALAN FORMAN, DANIEL HUME, MARK SARD, and KENNETH ZUERBLIS,<br><br>              Defendants. | Civil Action No.  19-cv-5002<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Turkhan Mirzayev ("Plaintiff"), by his undersigned attorneys, alleges, based upon personal knowledge as to himself and his own acts and on information and belief as to all other matters which is based upon fillings made by Stemline Therapeutics, Inc. ("Stemline" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"), as follows:

## INTRODUCTION

1.    Plaintiff asserts this action to remedy the false and misleading disclosures made by Stemline and its Board of Directors (the "Board) in the Company's proxy statement related to the Company's annual meeting of stockholders scheduled for June 25, 2019 (the "Annual Meeting").

2.    Specifically, on April 30, 2019, the Company filed a Schedule 14A Proxy Statement (the "Proxy") with the SEC for the Annual Meeting. In the Proxy, the Company asks stockholders of Stemline to approve an amendment (the "Amendment") to the Company's Certificate of Incorporation to increase the Company's authorized share capital by 30,000,000 shares of common stock (the "Certificate Proposal"). Per the Proxy, a majority of all stockholders

1

(not just a majority of the votes cast) have to vote "Yes" in order for the Certificate Proposal to be approved,

3.      However, the Company does not disclose whether brokers and banks who hold shares on behalf of stockholders have discretion to decide, absent specific instructions from the stockholders, how to vote the shares they hold on behalf of the stockholders in connection with the Certificate Proposal.

4.      Whether brokers and banks have such discretion is material information, as the answer to the question is likely to determine whether the Amendment is approved. In other words, if brokers and banks have discretion, the Amendment is likely to be approved, whereas if brokers and banks do not have discretion, the Amendment is not likely to be approved. Moreover, because it is not clear whether brokers and banks have discretion, stockholders do not know if they need to give specific voting instructions to their bank or broker in order to vote their shares for or against the Certificate Proposal.

5.      As such, the Proxy is materially false and misleading.

6.      Accordingly, Plaintiff seeks to enjoin the vote scheduled for the Annual Meeting seeking approval of the Certificate Proposal until the Company corrects the materially false and misleading statements regarding the Certificate Proposal.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act [15 U.S.C. § 78aa].

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper because many of the acts and conduct complained of herein occurred in this District and Stemline is headquartered in this District.

## PARTIES

10.      Plaintiff is a stockholder of Stemline and has held Stemline stock at all relevant times.

11.      Defendant Stemline is a commercial-stage biopharmaceutical company focused on oncology therapeutics. The Company is headquartered in New York, New York and trades on the NYSE under the ticker "STML."

12.      Defendant Ivan Bergstein, M.D. is the Chairman, Chief Executive Officer, President and founder of Stemline. He has served as a director of the Company since 2003.

13.      Defendant Ron Bentsur has served as a director of the Company since 2009.

14.      Defendant Darren Cline has served as a director of the Company since 2018.

15.      Defendant Alan Forman has served as a director of the Company since 2015.

16.      Defendant Daniel Hume has served as a director of the Company since 2018.

17.      Defendant Mark Sard has served as a director of the Company since April 2018.

18.      Defendant Kenneth Zuerblis has served as a director of the Company since 2012.

## SUBSTANTIVE ALLEGATIONS

19.      On April 30, 2019, the Company filed the Proxy with the SEC for the Company's Annual Meeting that is scheduled for June 25, 2019. Per the Proxy, as of the close of business on April 26, 2019, (the "Record Date"), the Company had a total of 43,561,110 shares of common stock outstanding and entitled to be voted at the Annual Meeting.

20.     In the Proxy, the Defendants are seeking stockholder approval of the Certificate Proposal (proposal four in the Proxy), which would amend the Company's Certificate of Incorporation to increase the Company's authorized share capital by 30,000,000 shares of common stock (from 53,750,000 shares to 83,750,000 shares). The Board recommends that stockholders approve the Amendment.

21.     As disclosed in the Proxy, in order for the Certificate Proposal to be approved, a majority of all stockholders (not just a majority of the votes cast) have to vote "Yes." In other words, in order for the Certificate Proposal to be approved, 21,780,556 shares have to vote in favor of it.

22.     Specifically, the Company stated that:

> The affirmative vote of a majority of our common stock outstanding is required to approve the amendment to our Certificate of Incorporation to increase our authorized share capital by 30,000,000 shares of common stock. The effect of an abstention or a broker or nominee non-vote is the same as that of a vote against the proposal.

23.     A broker non-vote occurs in connection with shares held by a stockholder in "street name," i.e., the stockholder's stock is held by bank or broker, with the bank or broker actually being the stock's record holder. To vote shares held in street name, a stockholder instructs the bank or broker how to the vote.

24.     Under the New York Stock Exchange rules, if a stockholder does not give voting instructions to the bank or broker, the bank or broker has the authority to vote the shares using their discretion on "discretionary" or "routine" proposals but not "non-discretionary" or "non-routine" proposals.

25.     A broker non-vote occurs where a broker does not vote uninstructed shares on routine proposals or where a vote is non-routine. Typically, brokers will use their discretion to vote

the shares they hold on routine matters based on management's recommendations, although not always.

26.     The impact that a broker non-vote has depends on how a vote is counted. If a proposal requires only approval by a majority of the votes cast, then a broker non-vote will have no effect. However, if a proposal requires the approval by a majority of all stockholders, then broker non-vote have the same effect as an "Against" vote.

27.     In the Proxy, the Defendants do not disclose whether the Certificate Proposal is a routine or a non-routine matter.

28.     Because the Defendants do not disclose whether the Certificate Proposal is a routine or a non-routine matter, the Proxy is false and misleading.

29.     Whether the Certificate Proposal is a routine or non-routine matter is material information to a reasonable stockholder. Indeed, because the Certificate Proposal requires the affirmative vote of a majority of the Company's outstanding stock, whether brokers have discretionary authority will likely be the difference between whether the Certificate Proposal is approved or not.

30.     Without knowing whether brokers have discretionary authority, stockholders do not know whether they need to affirmatively instruct their brokers regarding how to vote. If the Certificate Proposal is a routine vote, then a stockholder who wishes to vote against it must affirmatively instruct his or her broker as such, while a stockholder who wishes to vote for the Certificate Proposal need not do anything. Conversely, if the Certificate Proposal is a non-routine vote, then a stockholder who wishes to vote against it does not need to do anything, while a stockholder who wishes to vote for the Certificate Proposal must affirmatively instruct his or her broker as such.

31.     For example, at the Company's June 21, 2018 stockholder meeting, the Company sought stockholder approval of an amendment to the Company's equity compensation plan which was a non-routine matter. That amendment was approved, however, only 43.1% of the Company's stockholders affirmatively voted in favor of it.[1] This means that if the stockholder participation rate at the Annual Meeting is in the same range as at the previous stockholder meeting, it is unlikely that the Certificate Proposal will be approved if the Proposal is "non-routine." Conversely, if brokers have discretionary authority, then the Certificate Proposal is likely to be approved, as brokers typically vote affirmatively for management proposals. Had brokers had discretionary authority with respect to the equity compensation plan proposal at the June 21, 2018 stockholder meeting, then 66.6% of the outstanding shares would likely have voted in favor of the proposal.

## COUNT I

**Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

32.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

33.     The Defendants issued, caused to be issued, and participated in the issuance of materially false and misleading written statements to stockholders which were contained in the Proxy. In the Proxy, the Defendants solicit stockholder approval of the Certificate Proposal, but misrepresent and fail to disclose all material information with respect to voting on the Certificate Proposal.

34.     As a result of these actions, Plaintiff will be injured.

35.     If no action is taken to prevent to prevent the upcoming vote on the Certificate Proposal, Plaintiff will suffer irreparable harm.

---

[1] The vote only required approval by a majority of votes cast and was approved on that basis.

36.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     A declaration that the Proxy is materially false and misleading;

B.     A preliminary and permanent injunction, enjoining Stemline from certifying or otherwise accepting any vote cast, by proxy or in person, in connection with the Certificate Proposal unless a supplemental proxy statement that corrects the false and misleading statements outlined above is timely furnished to stockholders;

C.     A preliminary and permanent injunction requiring Stemline to furnish a supplemental proxy statement that corrects the false and misleading statements outlined above;

D.     to the extent the Certificate Proposal is approved and the Amendment is implemented prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Defendants, including, but not limited to, pre-judgment and post-judgment interest;

E.     Award Plaintiff the costs and disbursements of this action, including reasonable allowances of fees and costs for Plaintiff's attorneys, experts, and accountants; and

F.     Granting such other further relief as the Court deems just and proper.

Dated: May 29, 2019                     Respectfully submitted,

**LEVI & KORSINSKY LLP**

By:_____ */s/ William J. Fields*_____
Eduard Korsinsky (EK-8989)
William J. Fields (5054952)
Samir Shukurov (SS-9491)
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
ek@zlk.com
wfields@zlk.com
sshukurov@zlk.com

*Attorneys for Plaintiff*